UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOSHUA LEE DANIELS,
    Petitioner,

v.

CASE NO. 6:10-cv-200-ACC-KRS

SECRETARY, DEPARTMENT OF
CORRECTIONS, et al.,
    Respondents.
_____

## ORDER

This case is before the Court on a petition for habeas corpus relief filed pursuant to 28 U.S.C. § 2254 by Joshua Lee Daniels ("Petitioner") alleging two claims for relief (Doc. 1). Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought in the petition should not be granted (Doc. 4). Thereafter, Respondents filed a response and an amended response to the petition for writ of habeas corpus in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts* (Doc. 5, 7). Petitioner filed a reply and an amended reply to the responses (Doc. 8, 11). Upon due consideration of the petition, the amended response, Petitioner's replies, and the state court record contained in Respondents'

1

appendix and supplemental appendix, the Court concludes that the petition must be denied.

**I.     Procedural History**

Petitioner was charged by amended information in case 48-2142 with robbery with a firearm while wearing a mask (count 1), kidnaping with intent to commit a felony (count 2), two counts of false imprisonment with a weapon (counts 3, 4), grand theft (count 5), four counts of aggravated assault with a firearm (count 6-9), and burglary of a structure with an assault or battery with a firearm (count 10) (App. A).[1] Because of Petitioner's prior criminal record, the State filed notice of intent to seek the mandatory sentence under Florida Statute § 775.082(9)(a)(3) (App. B) and enhanced punishment pursuant to Florida Statue § 775.084 (App. C).

Petitioner proceeded to trial on December 15, 2003 and selected a jury. On December 16, 2003, pursuant to plea negotiations entered into between Petitioner and the State, Petitioner pleaded guilty to robbery with a firearm and a mask. Petitioner also pleaded guilty to burglary of a conveyance and petit theft in case 48-2412, a separate case before the court (App. G). Petitioner received a thirty year sentence on the robbery charge and a concurrent five year sentence on the burglary charge (App. G at 8). The State agreed to nolle prosequi the remaining counts in case 48-2142 (App. F).

On December 17, 2003, Petitioner told the court that he wanted to withdraw his plea

---

[1] Unless otherwise noted, referenced appendices refer to exhibits in Respondents' Appendix filed April 28, 2010 (Doc. 5) or to Respondents' Supplemental Appendix filed July 19, 2010 (Doc. 10).

(App. K at 16). The trial court appointed conflict counsel to represent Petitioner on the motion to withdraw plea (App. K at 26). On April 30, 2004, a hearing was heard on Petitioner's motion (App. K at 30). On May 18, 2004, the trial court denied the motion in a written order (App. K at 215-20). Petitioner appealed the denial of his motion to withdraw plea, and the Fifth District Court of Appeal *per curiam* affirmed on June 19, 2007 (App. O).[2]

Petitioner filed a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 (App. Q, R, S). The trial court summarily denied the motion in a written opinion (App. T), Petitioner appealed the denial, and the Fifth District Court of Appeal *per curiam* affirmed on May 5, 2009 (App. X).

Petitioner timely filed the instant petition on February 1, 2010 (Doc. 1).

## II. Legal Standards

### A. *Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")*

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)  resulted in a decision that was based on an unreasonable

---

[2] Prior to Petitioner's appeal of the denial of his motion to withdraw plea, the trial court was required to issue a new order due to its failure to include the proper case number on the original order. Ostensibly, the confusion was due to the similarity of the case number on the robbery charge (48-2142) to that of the burglary charge (48-2412). The trial court denied the motion to withdraw in the corrected version as well. This confusion caused the three year delay from the initial order denying the motion to withdraw plea to the affirmance on appeal.

> determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

The 'contrary to' and 'unreasonable application' clauses of § 2254(d)(1) articulate independent considerations a federal court must consider. *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005), *cert. denied*, 549 U. S. 819 (2006).  The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts.  Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id.*  Whether a state court's decision was an unreasonable application of law must be assessed in light of the record before the state court.  *Holland v. Jackson*, 542 U.S. 649, 652 (2004) (*per curiam*); *Bell v. Cone*, 535 U.S. 685, 697 n.4 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the

4

state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

### B.     *Standard for Ineffective Assistance of Counsel*

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense. *Id*. at 687-88. In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689-90. Thus, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective

assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

A guilty plea is open to attack on the ground that counsel did not provide the defendant with reasonably competent advice. *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980). The Supreme Court has held that the two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). In order to obtain relief under *Strickland*, a defendant who pleaded guilty must show that: 1) his lawyer's performance was deficient; and (2) a reasonable probability that, but for the counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill,* 474 U.S. at 59. The *Hill* court explained the prejudice requirement with specific regard to a defense counsel's alleged failure to investigate potentially exculpatory evidence:

> In many guilty plea cases, the "prejudice" inquiry will closely resemble the

> inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.

*Id.* at 59. In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. *Strickland*, 466 U.S. at 688.

### III. Analysis

#### A. Ground One

Petitioner contends that trial counsel ("counsel") was ineffective for failing to adduce a factual basis for the offense of robbery prior to his guilty plea (Doc. 1 at 14). Petitioner states that "Florida law requires that trial judges receive the factual basis of a statutory offense prior to accepting a Defendant's plea of guilty pursuant to a plea contract with the state." (Doc. 1 at 14) (emphasis in original). Petitioner alleges that he was prejudiced by counsel's failure because: 1) if the court had been notified, it would have either corrected the error or been bound not to accept the guilty plea; 2) had the objection been preserved, Petitioner would have prevailed on direct appeal "where such constitutes fundamental error under state law;" and 3) had Petitioner been aware that he was pleading to robbery with a firearm and mask, he "would not have relinquished his right to trial by jury, where the state would not prove this beyond a reasonable doubt." (Doc. 1 at

16-17). Because Petitioner's allegations are not supported by law or by the state court record, this claim must fail.

Florida Rule of Criminal Procedure 3.172(a) requires that, before accepting a plea of guilty, "the trial judge shall determine that the plea is voluntarily entered and that a factual basis for the plea exists." However, the rule provides no requirement for the judge to recite the factual basis at the plea hearing. Furthermore, Florida case law is clear that a trial court may determine that a factual basis for a plea exists based on a probable cause affidavit. *Mack v. State*, 616 So.2d 109 (Fla. 4th DCA 1993); *State v. Franklin*, 669 So. 2d 339, 340 (Fla. 4th DCA 1996). At Petitioner's plea hearing, the trial court specifically stated, "I know there's a factual basis in the score – in this case, because I read the affidavit and talked extensively with the lawyers about the case." (App. G at 6). The referenced affidavit sets forth the underlying basis for the robbery charge and supports a factual basis for the plea (App. K at 64-65). As such, Petitioner's allegations that the failure to recite a factual basis for the plea is "fundamental error under state law" and that the court would not have accepted his guilty plea had counsel insisted upon a recitation of the factual basis are without merit.

Any allegation that Petitioner believed he was pleading only to a burglary charge also lacks merit. No deficiency in the factual basis presented to the trial court indicates that Petitioner mistakenly entered a plea to the wrong offense. *See Williams v. State*, 316 So. 2d 267. 271-72 (Fla. 1975) (purpose of rule that trial court be satisfied of a sufficient factual basis for a plea is to ensure that a defendant does not plead to the wrong offense). The trial

court made it clear to Petitioner that he was pleading guilty to a robbery charge. After a jury had been chosen for Petitioner's trial, counsel specifically asked the court to allow Petitioner to change his plea on count 1 of the information (robbery) and, in exchange, receive a thirty year sentence as a prison releasee reoffender (App. G at 2). In response, the court explained to Petitioner the rights he was giving up by pleading guilty (App. G at 3-4). The following exchange then occurred:

> THE COURT: Okay. Robbery with a firearm and a mask is the Count charged – is the crime charged in Count I.
>
> COUNSEL: Yes, Your Honor.
>
> THE COURT: It is a felony of the first degree, punishable by up to life. The State Is indicating, I believe, that the State have [sic] agreed – have agreed that your sentence would be 30 years in prison as a Prison Releasee Reoffender, which means that you would have to do every day of 30 years. That's what I think it means. Now, between now and 30 years from now, somebody may decide that it means something else, so I don't know. All I can do is tell you that – what I understand the law to be right now. Do you understand that?
>
> [PETITIONER]: Yes, sir.
>
> THE COURT: Has anybody promised you anything other than what you've heard us say here today in court?
>
> [PETITIONER]: No, sir.
>
> THE COURT: All right. Is your desire to give up the rights that I've explained to you and plead guilty to this offense?
>
> [PETITIONER]: Yes, sir.

(App. G at 4-5). After the judge questioned Petitioner about his education and mental

health, the judge noted that a factual basis for the plea existed (App. G at 6). Petitioner was asked whether he was satisfied with his lawyer's services, and he answered affirmatively (App. G at 6). When asked why he wanted to plead guilty, Petitioner stated that he was afraid of what would happen if convicted at trial (App. G at 6). The court then explained that, "if this jury came back and found you guilty, I would have to sentence you to life in prison as a Prison Releasee Reoffender." Counsel agreed, stating: "The statute is very specific in that there is no provision, whatsoever, for release, in the Florida Statutes; that [Petitioner] would literally have to die in prison." (App. G at 7). The court reiterated that "what [Petitioner was] gaining by the entry of this plea is knowing that [his] prison sentence would be 30 years." (App. G at 7). It is only at this point, after Petitioner had been advised at least two times that he would receive 30 years in prison if he pleaded guilty, that counsel notified the court that Petitioner also wanted to plead guilty to burglary of a conveyance and petit theft in case 48-2412, an entirely separate case before the court (App. G at 7).

> THE COURT:      Okay. Sir, do you want to plead guilty as to those offenses, as well?
>
> [PETITIONER]:   Yes, sir.
>
> THE COURT:      All right. And I will . . .
>
> [COUNSEL]:      And, actually – I apologize . . .
>
> THE COURT:      That's okay.
>
> [COUNSEL]:      . . . – it would be a five-year sentence as to Count I and a 60-day sentence as to Count II, since it wasn't . . .

> THE COURT: Shahanna Cabeer (phonetic) parked her 1994 green Honda Accord in the parking lot of the lakefront Apartments at 9:00 p.m. on January 11th, 2002, and locked it up. The defendant broke into it. His fingerprints were obtained from an exterior box that had been in the defendant's vehicle.
>
> I do find a factual basis for the acceptance of his plea in that case, as well. In that case, I'll accept his plea, sentence – adjudicate him guilty and sentence him to five years in the Department of Corrections; $281 in costs; that sentence to be concurrent with the sentence to be imposed in 02-2142.
>
> In that case, Mr. Daniels, the Court accepts your plea as to Count I, adjudicates you guilty of the offense of robbery with a firearm and a mask, sentences you to 30 years in the Department of Corrections as a Prison Releasee Reoffender . . . .

(App. G at 7-9). Notably, no mention was made of the burglary charges in case 48-2412 until after the 30 year robbery plea in case 48-2142 had been thoroughly discussed and accepted by the court as knowing and voluntary.

Petitioner raised this issue in grounds one and three of his Rule 3.850 motion for post-conviction relief (App. Q).[3] The trial court determined that "Defendant clearly knew the charge to which he was pleading and the sentence he faced, and he also expressed satisfaction with his counsel." (App. T at 3). The court acknowledged that the judge had

---

[3] In ground one of Petitioner's Rule 3.850 motion for post-conviction relief, Petitioner argued that counsel was deficient for failing to advise him that he was pleading to both robbery and burglary. In the instant petition, Petitioner appears to argue that counsel's failure to require the court to recite a factual basis was prejudicial because he did not understand that he was pleading guilty to robbery instead of burglary (Doc. 1 at 14, Doc. 8 at 5).

read the factual basis for burglary instead of robbery (App. K at 36).[4] However, instead of extensively addressing the claims in the order, the court determined that the substance of Petitioner's claims had already been addressed in the court's Order Denying Motion to Withdraw Plea (App. T at 4).[5]

At the hearing on Petitioner's motion to withdraw plea, he testified that he believed he was pleading guilty only to burglary and that he would still go to trial on the robbery charge (App. K at 36). Petitioner testified that he did not remember counsel representing him during the plea; telling him that he would receive 30 years if he pleaded guilty; or the court advising him that by entering the plea he would receive only 30 years in prison instead of life (App. K at 39-43). He also testified that counsel had instructed him to tell the court that he was afraid of what would happen if he was convicted at trial (App K at 42).

Counsel testified that, because of the amount of incriminating evidence in the case and the fact that Petitioner would receive life in prison if convicted at trial, a great deal of effort was expended in plea negotiations with the State (App. K at 48 -51). Counsel also

---

[4]The trial court did not read the factual basis for the burglary charge at such time, or in such a way, that it could be reasonably confused as the factual basis for the robbery charge. As such, Petitioner's argument that the state court conceded failure to adduce the factual basis of the robbery conviction is disingenuous and not supported by the record (Doc. 8 at 2).

[5]Because the Rule 3.850 court relied heavily on the evidence adduced at the withdrawal hearing, the trial court's findings in the Order Denying Motion to Withdraw Plea are entitled to deference under AEDPA. 28 U.S.C. § 2254(e)(1); *Guidry v. Dretke*, 397 F.3d 306, 325-26 (5th Cir.2005) (implying that evidence adduced at state pre-trial suppression hearings is relevant to the AEDPA determination).

testified that he explained to Petitioner, "on a few occasions," the maximum sentence he could face if found guilty at trial and that Petitioner chose to enter a plea (App. K at 49 - 51).

In a written order denying Petitioner's motion to withdraw plea, the trial court stated:

> The Court finds [counsel] to be the more credible witness. Furthermore, the transcript of the plea colloquy is clear, beginning with Mr. O'Mara's statement that Defendant was entering a plea in exchange for a sentence of 30 years as a prison releasee reoffender, and continuing with the Court's colloquy to ascertain that Defendant was willingly entering a plea to the offense of robbery with a firearm and a mask. Only after that was discussed did Mr. O'Mara also bring up the fact that Defendant would also be entering a plea to another case, and Defendant responded affirmatively when the Court asked if he wanted to plead guilty to those offenses *as well*.

(App. K at 217) (emphasis in original). The trial court's determination that Petitioner knew he was pleading guilty to robbery precludes a finding that Petitioner was prejudiced by counsel's alleged failure to adequately apprise him of such. Finally, any argument by Petitioner that he was prejudiced because no factual basis existed for the plea is meritless. Police chased Petitioner and his co-defendants from the crime scene as they fled in a black Camaro automobile. After the suspects abandoned the car, they were tracked by a K-9 unit who found them hiding in a moving truck with money from the robbery. Petitioner's DNA was obtained from the car. After his arrest, Petitioner made a taped confession to police (App. K at 53, 65).

Petitioner can show neither deficient performance nor prejudice as a result of

counsel's alleged failure to adduce a factual basis for Petitioner's plea to robbery. As such, this claim fails under both prongs of *Strickland* and claim one is denied pursuant to 28 U.S.C. § 2254(d).

**B.     Claim Two**[6]

Petitioner claims that counsel erred by not requesting that Petitioner undergo a psychiatric evaluation before entering his plea (Doc. 1 at 17). Specifically, he contends:

> Petitioner expressly advised counsel that he was not taking his anti-psychotic medication at all times material to said plea where the medical staff at the count [sic] jail had denied him access to said psychotropic medications after he attempted to resume the administering of said medication. (Petitioner had voluntarily refused "Risperdal" because it caused him fatigue and excessive sleeping bouts).

(Doc. 1 at 17). Petitioner alleges that, as a result of untreated psychotic disorders, he

---

[6]Respondents allege that, because Petitioner did not argue claim two when he appealed the denial of his post-conviction motion, the claim is not exhausted (Doc. 7 at 12). However, under Florida law in affect at the time of Petitioner's appeal, a petitioner who did not file a brief in an appeal of the summary denial of a Rule 3.850 motion did not waive issues not addressed in the brief. *Webb v. State*, 757 So. 2d 608, 609 (Fla. 5th DCA 2000) (holding that a claim in a Rule 3.850 motion had not been waived by appellant's failure to argue it in his initial brief because the motion had been denied without an evidentiary hearing); *Cortes v. Gladish*, 216 F. Appx. 897, 899 (11th Cir. 2007) (since petitioner's post-conviction appeal did not follow an evidentiary hearing, his decision to address only some of the issues in his appellate brief did not waive the remaining issues raised in his Rule 3.850 motion); *see also* Fla.R.App.P. 9.141(b)(2)(C) (no appellate brief required in appeal from summary denial of Ruled 3.850 motion).
    This Court recognizes that *Webb* was receded from in *Ward v. State*, 19 So. 3d 1060 (Fla. 5th DCA 2009) (holding that issues not raised in appellate brief from summary denial of Rule 3.850 are abandoned). However, Petitioner's appeal predates the decision in *Ward*. As such, claim two is addressed on the merits.

possessed no ability to maintain rational thought processes and would have hallucinations (Doc. 1 at 17). Petitioner argues that he was prejudiced by counsel's failure to request a psychiatric exam because, "had Petitioner been in his right state of mind he would not have pled guilty to an offense in which the state had no factual basis for." (Doc. 1 at 17).

The issue of whether counsel should have requested a psychiatric evaluation of Petitioner was addressed in the Order Denying Motion to Withdraw Plea. The trial court stated:

> Attorney O'Mara has been practicing law for over 20 years and has had ample opportunity to observe clients whose mental capabilities were impaired. He had no such concerns in this case and no occasion to believe that a psychiatric evaluation was warranted. He acknowledged that making a decision to enter a plea in exchange for a sentence of 30 years would be stressful for anyone, but stated: "Knowing the conditions for competency to make legal decisions, I was comfortable." He believed that Defendant understood the plea that he entered and realized that if he *did not* enter the plea, he would go to trial, where he would face a good chance of conviction and in that case, a mandatory life sentence.

(App. K at 265) (emphasis in original). A review of the record supports the state court's conclusion. Counsel testified that, during the twenty-two years he had practiced law, he had, on occasion, asked for his clients to be examined because he was concerned about the client's mental status. He testified that he believed Petitioner understood what he was facing, and he was comfortable that Petitioner was competent to plead guilty. Counsel stated that he could not remember if he had asked Petitioner if he was on medication, but when asked directly whether he ever had occasion to believe that a psychological evaluation of Petitioner was warranted, counsel answered, "no." (App. K at 50-53).

15

Petitioner argues that he advised counsel that he was not taking his ant-psychotic medication, and therefore, "counsel was on notice that Petitioner was suffering from untreated psychotic disorders." (Doc. 1 at 17). However, as noted above, counsel testified that he believed Petitioner competent to plead guilty and the trial court specifically found counsel a more credible witness than Petitioner (App. K at 217). A state court's determination of any factual issue is entitled to substantial deference under the AEDPA, and deference to a trial court's credibility determination is heightened on habeas review. 28 U.S.C. § 2254(e)(1); *Rice v. Collins*, 546 U.S. 333 (2006) (noting that credibility determinations are accorded even greater deference on habeas review). As such, this Court also finds counsel's testimony that he believed Petitioner was competent to stand trial more credible than Petitioner's assertion that counsel knew of his alleged mental illness, but still chose not to have him evaluated for competency (Doc. 1 at 17).

Furthermore, even if counsel had notice that he should investigate Petitioner's competency, a finding not made by this Court nor supported by the record, that does not mean that a psychiatric evaluation was necessarily in order. Rather, it means only that counsel needed to make a reasonable decision that rendered further investigation unnecessary. *See Strickland*, 466 U.S. at 691. Counsel testified that he met with Petitioner several times at the jail and spoke with him on the phone often. Petitioner also consulted with counsel when selecting the jury prior to his change of plea. Given counsel's experience, the amount of time counsel spent with Petitioner, and counsel's testimony that he believed Petitioner to be competent to enter a plea, this Court cannot conclude that

counsel's failure to have Petitioner evaluated for competency was unreasonable. As such, claim two fails under the first prong of the *Strickland* analysis.

Because Petitioner has failed to establish that counsel's performance was deficient, it is unnecessary for this court to determine whether Petitioner was prejudiced by counsel's failure to seek a psychiatric evaluation of Petitioner. *See Strickland*, 466 U.S. at 697 (stating that there is no reason for a court "to address both components of the inquiry if the defendant makes an insufficient showing on one."). Accordingly, the Court finds that Petitioner has failed to establish that the state court's decision was either contrary to, or an unreasonable application of *Strickland*, and this claim is denied pursuant to § 2254(d).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV.  Certificate of Appealability

This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Secretary Department of Corrections*, 568 F.3d 929, 934 (11th Cir. 2009). When a district court dismisses a federal habeas petition on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue only when a petitioner shows "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of

a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*; *Lamarca*, 568 F.3d at 934. However, a prisoner need not show that the appeal will succeed. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Petitioner has not demonstrated that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. Moreover, Petitioner cannot show that jurists of reason would find this Court's procedural rulings debatable. Petitioner has failed to make a substantial showing of the denial of a constitutional right. Thus, the Court will deny Petitioner a certificate of appealability.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Petition for Writ of Habeas Corpus (Doc. 1) filed by Joshua Lee Daniels is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2. Petitioner is **DENIED** a Certificate of Appealability.

3. The Clerk of the Court is directed to enter judgment accordingly and close this case.

**DONE AND ORDERED** at Orlando, Florida, this 20th day of December 2010.

ANNE C. CONWAY
United States District Judge

Copies to:
pssa 12/20
Joshua Lee Daniels
Counsel of Record